EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| En el asunto de la Investigación en Torno a Juan M. Cruzado Laureano, Ex Alcalde de Vega Alta | Certiorari<br><br>2003 TSPR 21<br><br>158 DPR _____ |

Número del Caso: CC-2002-0496


Fecha: 25 de febrero de 2003


Tribunal de Circuito de Apelaciones:
          Circuito Regional I


Juez Ponente:
          Hon. Carlos Rodríguez Muñíz



Oficina del Procurador General
          Hon. Roberto J. Sánchez Ramos
          Procurador General

Abogado de la Parte Recurrida:

          Por Derecho Propio


Oficina del Fiscal Especial Independiente:
          Lcda. Crisanta González Seda
          Lcdo. Ramón E. Gómez Colón
          Lcdo. Angel González Román


Materia: Revisión Administrativa Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

En el asunto de la
Investigación en torno a
Juan M. Cruzado Laureano,
Ex Alcalde de Vega Alta

                                    CC-2002-496

**Opinión del Tribunal emitida por la Juez Asociada SEÑORA NAVEIRA DE RODÓN**

San Juan, Puerto Rico a 25 de febrero de 2003

I

El asunto ante nos está enmarcado dentro de las disposiciones de la Ley Núm. 2 de 23 de febrero de 1988, según enmendada, 3 L.P.R.A. sec. 99h <u>et seq</u>, conocida como la Ley del Fiscal Especial Independiente (en adelante Ley Núm. 2). En armonía con el propósito social que la inspira y su jurisprudencia interpretativa debemos evaluar la negativa del Panel sobre el Fiscal Especial Independiente (en adelante Panel) de atender una

querella contra un funcionario gubernamental, cursada por la Secretaria de Justicia, debido a que la información recibida por el Departamento de Justicia, mediante la cual dio comienzo la investigación preliminar, no fue juramentada. Según interpreta el Panel y avala el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), éste es un requisito exigido por el Art. 4 de la Ley Núm. 2 y, que, según la jurisprudencia, no es subsanable con declaraciones juradas que se obtengan como producto del proceso de la investigación preliminar que se realice.

## II

El 16 de noviembre de 2001 el Sr. Jorge Colberg Toro, Secretario General del Partido Popular Democrático, mediante carta firmada con su puño y letra, solicitó a la Secretaria del Departamento de Justicia, Hon. Anabelle Rodríguez (en adelante Secretaria), que investigara la conducta del entonces Alcalde de Vega Alta, Sr. Juan M. Cruzado Laureano, ya que mientras ostentaba el cargo de Presidente del Comité Municipal del Partido Popular en dicho Municipio (en adelante Comité), utilizó fondos de la cuenta bancaria de éste para realizar transacciones contrarias a la ley.[1]

_____

[1]    La carta lee como sigue:

Hon. Anabelle Rodríguez
Secretaria
Departamento de Justicia

Estimada Secretaria:

    Como es de su conocimiento, el Sr. Juan Manuel Cruzado Laureano ha sido acusado por un Gran Jurado Federal por varios delitos relacionados a alegados actos de corrupción. El señor Cruzado Laureano, además de ser Alcalde del Municipio de Vega Alta, era Presidente del Comité Municipal del Partido Popular Democrático en dicho Municipio.

El 8 de marzo de 2002, la Secretaria sometió ante el Panel un informe recomendando la designación de un Fiscal Especial Independiente (en adelante FEI) para que investigara los actos alegadamente cometidos por el señor Cruzado Laureano. En dicho informe señaló que la investigación preliminar fue realizada por el Departamento de Justicia, a solicitud del Secretario General del Partido

---

Una vez sale a la luz pública las acusaciones con [sic] el señor Cruzado Laureano, el Partido Popular Democrático procedió a suspenderlo sumariamente de todas las posiciones de liderato y además, se requirió la cancelación y entrega de información relacionada a cuentas bancarias abiertas a nombre del Comité Municipal de Vega Alta del Partido Popular Democrático.

Durante ese proceso de revisión hemos obtenido información en el sentido de que documentos de esa cuenta bancaria han desaparecido. Asimismo, que en esa cuenta bancaria se depositaron y retiraron fondos de la misma, sin que se tenga constancia clara el origen o el propósito para los cuales que [sic] fueron utilizados.

Dado el hecho de que el señor Cruzado Laureano alegadamente utilizó cuentas bancarias para realizar transacciones contrarias a la ley, solicitamos que el Departamento que usted dirige, intervenga y examine la cuenta del Comité Municipal del Partido Popular Democrático de Vega Alta que está registrada en la Sucursal del Banco Popular de ese Municipio.

Nos vemos imposibilitados, sin embargo, en proveer el número de dicha cuenta bancaria dado el hecho de que no tenemos esa información.

Hacemos esta solicitud por entender que esta institución, el Partido Popular Democrático, tiene un firme compromiso de combatir la corrupción y tiene además, una obligación moral de proteger el buen nombre y el prestigio de esta organización política.

Reciba mis mejores deseos.

Cordialmente.

firmado
Jorge Colberg Toro
Secretario General

En el escolio 1 de la sentencia emitida por el Tribunal de Circuito de Apelaciones el 31 de mayo de 2002, surge que previo a que la petición del Secretario General del Partido Popular fuera sometida al Departamento de Justicia, el Sr. Juan M. Cruzado Laureano había sido acusado por un Gran Jurado Federal por once (11) cargos que incluían extorsión, lavado de dinero y obstrucción a la justicia.

Popular Democrático, y que en el transcurso de la misma, se recopiló evidencia documental y testifical que establece que cuando el señor Cruzado Laureano se desempeñaba como Alcalde de Vega Alta, se apropió ilegalmente de dinero del Comité Municipal del Partido Popular Democrático en ese Municipio. Indicó, además, que como parte de la investigación se tomaron cinco (5) declaraciones juradas a diferentes funcionarios del Municipio y personas relacionadas con el Comité Municipal del Partido Popular Democrático.[2]

El 12 de marzo de 2002 el Panel emitió una resolución en la que expresó que de la información sometida por la Secretaria, no surgía que la investigación preliminar realizada hubiese sido iniciada mediante la presentación de una querella juramentada o al haber recibido información bajo juramento conforme lo requieren la Ley Núm. 2, y la jurisprudencia interpretativa. En vista de ello, sostuvo que estaba imposibilitado de pasar juicio sobre la querella, a menos que el Departamento de Justicia subsanara el defecto. Por su parte, el Tribunal de Circuito confirmó la resolución recurrida.[3]

Por no estar conforme con dicha determinación, la Secretaria, representada por el Procurador General, acude ante nos planteando como único error lo siguiente:

---

[2] Conforme a los documentos que obran en autos, las declaraciones juradas fueron tomadas entre el 22 de febrero y 1ro de marzo. Entre los declarantes figuran: el Sr. Orlando Javier Molina, Director de Finanzas del Comité en 1998; la Sra. Soraya Ruiz Méndez, secretaria del Ex Alcalde Cruzado Laureano; el Sr. Benjamín Declet Salgado, designado Director de Finanzas del Comité en el 2001; el Sr. Pedro E. Carrasquillo Maldonado, Ayudante Ejecutivo; y el Sr. Eliezer González Ramos, Presidente Interino del Comité.

[3] El Juez de Apelaciones Hon. Charles A. Cordero emitió opinión disidente.

> Erró el Tribunal de Circuito de Apelaciones al resolver que el Panel no tiene jurisdicción para actuar sobre el informe de la Secretaria de Justicia porque la información recibida inicialmente por la Secretaria no se juramentó, a pesar de que la Secretaria refirió al Panel, como parte del informe, varias declaraciones juradas obtenidas durante el curso de la investigación preliminar correspondiente.

III

La Ley Núm. 2, a través de la figura del Fiscal Especial Independiente, tiene el propósito de hacer viable la política pública del gobierno de "prevenir, erradicar y penalizar" toda aquella conducta indebida o constitutiva de delito de funcionarios gubernamentales. Responde a la necesidad imperante del Estado de restaurar la confianza del Pueblo en su gobierno y en sus servidores públicos. Véase, Exposición de Motivos, 1988 Leyes de Puerto Rico 6. Además, bajo la supervisión imparcial de un Panel de ex jueces nombrados por el (la) Gobernador(a) promueve una investigación completa, imparcial y libre de cualquier conflicto de intereses entre los investigadores e investigados. Art. 10 de la Ley Núm. 2, _supra_, 3 L.P.R.A. sec. 99q. Véase, además, _Pueblo_ v. _Rexach_, 130 D.P.R. 273, 295 (1992).

La Ley, en su Art. 4, _supra_, le otorga al (a la) Secretario(a) de Justicia la facultad de investigar preliminarmente a empleados y a altos funcionarios del gobierno tales como el Gobernador, los jueces, jefes de agencias y alcaldes entre otros, cuando reciba información bajo juramento que a su juicio constituya causa suficiente para entender que se ha cometido algún delito grave y menos grave incluido en la misma transacción o evento y los

delitos contra los derechos civiles, la función pública y el erario público. 3 L.P.R.A. sec. 99k(1). Entre los factores que el (la) Secretario(a) debe tomar en consideración para determinar si la información jurada provee causa suficiente se encuentran la seriedad de la imputación, la credibilidad de la persona que la formula y los hechos en los que se fundamenta la imputación. Igualmente, se considerará causa suficiente para investigar cualquier informe del Contralor o de la Oficina de Ética Gubernamental en el que se recomiende al (a la) Secretario(a) de Justicia la presentación de cargos criminales contra cualquiera de los funcionarios cubiertos por las disposiciones de dicha ley. Art. 8(1)-(2) de la Ley Núm. 2, supra, 3 L.P.R.A. sec. 99(1)-(2). Véase, además, Pueblo v. Rodríguez Santana, 146 D.P.R. 860, 871-872 (1998).

Concluida la investigación preliminar, el (la) Secretario(a) rendirá un informe detallado al Panel y, de así entenderlo, recomendará la designación de un FEI. Ley Núm. 2, supra; 3 L.P.R.A. sec. 99k(2). Cabe destacar que el Panel tendrá discreción para nombrar un FEI y ordenar la investigación del caso independientemente de la recomendación del (de la) Secretario(a) de Justicia. Además, si como resultado de la investigación es necesaria la presentación de denuncias o acusaciones, esta responsabilidad le corresponderá exclusivamente al FEI, y no al (a la) Secretario(a) de Justicia. Ley Núm. 2, supra. Véanse, Pueblo v. Rodríguez Santana, supra; Pueblo v. Rexach Benítez, supra, pág. 294.

**IV**

Como ya expresáramos, la investigación en torno al Ex Alcalde del Municipio de Vega Alta, Sr. Juan M. Cruzado Laureano se inició a solicitud del Sr. Jorge Colberg Toro luego de recibir información sobre posibles actos ilegales con relación a fondos del Comité Municipal del Partido Popular Democrático en ese Municipio. La carta del señor Colberg Toro no fue juramentada, aunque sí fue firmada con su puño y letra.

En el curso de la investigación que realizó el Departamento de Justicia se acumuló información, incluyendo declaraciones juradas, que culminaron en determinación de causa para creer que el señor Cruzado Laureano, mientras se desempeñaba como alcalde de Vega Alta, incurrió en el delito de apropiación ilegal por más de $200.00, delito grave tipificado en el Art. 166(b) del Código Penal. En vista de ello, la Secretaria de Justicia rindió ante el Panel un informe preliminar recomendando un FEI para que investigara la conducta del señor Cruzado Laureano.

El Panel, sin embargo, se negó a evaluar el informe de la Secretaria ya que conforme a su interpretación, el Art. 4 de la Ley Núm. 2 y la jurisprudencia aplicable, le impedían pasar juicio sobre una querella cuando la información que inicia la investigación preliminar en el caso de autos, la carta del señor Colberg Toro, no está debidamente juramentada.[4] Ello independientemente de que durante el transcurso de la investigación preliminar hayan surgido declaraciones juradas que avalan lo alegado en la carta del señor Colberg Toro. El Tribunal de Circuito, por

_____

[4]    Pueblo v. Rodríguez Santana, 146 D.P.R. 860 (1998) y Pueblo v. Rexach Benítez, 130 D.P.R. 273 (1992).

su parte, confirmó dicha determinación. No les asiste la razón. Veamos por qué.[5]

V

En Pueblo v. Rodríguez Santana, supra, a la pág. 873, ratificando lo ya resuelto en Pueblo v. Rexach Benítez, supra, expresamos que el requisito legal de juramentación no es uno jurisdiccional sino de cumplimiento estricto, por lo que la falta de éste no priva al (a la) Secretario(a) de Justicia de su facultad para iniciar una investigación preliminar aunque impide al Panel pasar juicio sobre la querella (informe). También, aclaramos, que la Ley Núm. 2 no exige la presentación de una querella ante el (la) Secretario(a) de Justicia, basta sólo con información bajo juramento que constituya causa suficiente para comenzar la investigación preliminar. Indicamos, además, que el fin primordial del requisito de juramentación es desalentar la presentación de querellas frívolas que pongan en riesgo la reputación y el buen nombre del funcionario gubernamental.[6] Por último, pero no menos importante, señalamos que se trata de un defecto que puede ser subsanado con la posterior obtención y remisión al Panel de información bajo juramento siempre y cuando la acción penal no haya prescrito.

De lo antes expuesto podemos razonablemente colegir que no es requisito esencial el que la información que da inicio a la investigación preliminar por parte del (de la) Secretario(a) de Justicia, tenga que ser juramentada y que

_____

[5]    Cabe destacar que no estamos pasando juicio sobre los méritos o deméritos de los cargos imputados al Ex Alcalde de Vega Alta Juan M. Cruzado Laureano.
[6]    Es menester puntualizar que el requisito de juramentación expone al querellante o declarante a la penalidad de perjurio, de ser falsa la información brindada.

además, sea la única válida para que el Panel pueda considerar el asunto. Lo importante es que se obtengan declaraciones juradas de las cuales surja la causa suficiente exigida por la Ley, para que el (la) Secretario(a) rinda el informe al Panel y este último pueda pasar juicio sobre el mismo.

Precisamente, en Pueblo v. Rodríguez Santana, supra, a la pág. 874 al distinguir la situación en Pueblo v. Rexach Benítez hicimos hincapié en que en este último, "a *diferencia del que nos ocupa, no había información bajo juramento alguno que sirviese como salvaguarda procesal de la reputación del querellado ni que sometiese al querellante a la penalidad de perjuicio en caso de haber mentido.*" (Énfasis en el original.) Así pues, la interpretación más razonable, en armonía con la intención legislativa y que evita un resultado indeseable (indebida ventaja del funcionario público investigado sobre el ciudadano común) es que "el querellante" se trate de la persona que presta declaración jurada, independientemente de que sea o no el querellante original.

Darle otra interpretación a lo señalado por este Tribunal le pondría una restricción, indebida y no autorizada por ley, al Departamento de Justicia, ya que en muchos casos el Departamento inicia la investigación a base de una querella o información bajo juramento; pero en muchos otros casos la investigación la inicia a base de la información que traen al Departamento de Justicia personas que no tienen conocimiento personal de los hechos o simplemente no están dispuestas a prestar una declaración jurada.

Por otro lado, avalar la interpretación del Panel tendría el efecto práctico de concederle privilegios

procesales a funcionarios públicos cubiertos por la Ley del Fiscal Especial Independiente que no tendría un ciudadano común sujeto a un procedimiento ordinario de investigación y procesamiento criminal. Como sabemos, un individuo común está sujeto a ser procesado con información bajo juramento que se obtenga en cualquier etapa o momento de la investigación, mientras que según el Panel y el Tribunal de Circuito, un funcionario público no podría ser procesado si la información inicial que se provee a la Secretaria de Justicia no fue juramentada. Este Tribunal ha señalado que al interpretar la Ley del Fiscal Especial Independiente, los tribunales no pueden crear una norma distinta y más favorable para beneficiar a los funcionarios públicos investigados, en comparación con la investigación y procesamiento ordinario. Sobre el particular, en <u>Silva</u> v. <u>FEI</u>, 137 D.P.R. 821, 834-835 (1995), expresamos que: "*los funcionarios públicos investigados bajo la Ley del FEI no pueden tener más derechos de acceso al expediente investigativo que los que tiene un ciudadano común que sea objeto de una investigación criminal*". (**Énfasis en el original.**) Señalamos, además que:

> *[s]i ésta es la norma para todos los ciudadanos; ¿cómo los tribunales van a crear una norma distinta y más favorable para beneficiar a los funcionarios públicos investigados bajo la Ley del F.E.I. [Fiscal Especial Independiente], en ausencia de una intención legislativa a ese respecto?* **Ello contravendría la intención del legislador de promover y preservar la integridad de los funcionarios y las instituciones públicas del Gobierno de Puerto Rico a través de los mecanismos dispuestos en la Ley del F.E.I. De avalar la norma creada por el tribunal de instancia en este caso, se estaría erosionando el propósito de nuestra Asamblea Legislativa de diseñar un `componente esencial de un esquema integral e innovador ...con el propósito de restaurar la confianza del pueblo en su gobierno y en sus servidores públicos.'** (Énfasis en el original.) <u>Silva</u> v. <u>F.E.I.</u>, <u>supra</u>, pág. 835.

Como se podrá observar, la Ley Núm. 2, debe interpretarse de forma que el Panel pueda pasar juicio sobre un informe de la Secretaria de Justicia recomendando el nombramiento de un FEI, siempre que el informe venga acompañado de una o varias declaraciones juradas de las cuales surja la causa suficiente que exige la ley. **Sólo, la ausencia total de información juramentada impediría que el Panel pase juicio sobre el caso referido.**

**Es norma reiterada en nuestro ordenamiento que** "*las leyes deben ser interpretadas y aplicadas en armonía con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver.*" **(Énfasis nuestro y citas omitidas.)** Pueblo v. Zayas Rodríguez, **147 D.P.R. 530, 537 (1999).**

**La decisión emitida por el Panel y avalada el Tribunal de Circuito no hace valer el propósito social y la intención legislativa de la Ley Núm. 2, ya que su efecto práctico es favorecer indebidamente al funcionario público investigado, en detrimento del propósito de ésta de prevenir, erradicar y penalizar cualquier comportamiento delictuoso o indebido de cualquier funcionario público y así restaurar la confianza del Pueblo en su gobierno y servidores públicos.**

**Por los fundamentos antes expuestos, se revoca la determinación del Tribunal de Circuito y por consiguiente la resolución emitida por el Panel; y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.**

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


En el asunto de la
Investigación en torno a
Juan M. Cruzado Laureano,
Ex Alcalde de Vega Alta

                                    CC-2002-496




                          SENTENCIA



        San Juan, Puerto Rico a 25 de febrero de 2003



        Por los fundamentos expuestos en la Opinión
que antecede, se revoca la determinación del
Tribunal de Circuito de Apelaciones y, por
consiguiente, la resolución emitida por el
Panel.  Se devuelve el caso para que continúen
los procedimientos de forma compatible con lo
aquí resuelto.

        Lo pronunció, manda el Tribunal y certifica
la Secretaria del Tribunal Supremo.  El Juez
Asociado señor Rivera Pérez emitió Opinión
Disidente a la cual se unió el Juez Asociado
señor Corrada del Río.  El Juez Asociado señor
Hernández Denton no interviene.



                        Patricia Otón Olivieri
                     Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

En el asunto de la
investigación en torno a
Juan M. Cruzado Laureano,                    CC-2002-496
Alcalde de Vega Alta

**Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez, a la cual se une el Juez Asociado señor Corrada del Río.**

San Juan, Puerto Rico, a 25 de febrero de 2003.

La Mayoría entiende que es subsanable el requisito exigido por el Artículo 4 de la Ley Núm. 2 de 23 de febrero de 1988, según enmendada,[7] conocida como la Ley del Fiscal Especial Independiente, a los efectos que para que la Secretaria de Justicia pueda referir al Panel sobre el Fiscal Especial Independiente una imputación de conducta delictiva contra uno de los funcionarios públicos allí enumerados, incluyendo los alcaldes, la información inicial recibida por el Departamento

---

[7] 3 L.P.R.A. sec. 99k.

de Justicia, mediante la cual se dio comienzo a la

investigación preliminar por esa agencia, tiene que

de Justicia, mediante la cual se dio comienzo a la

investigación preliminar por esa agencia, tiene que

estar juramentada. La Mayoría decide y pauta en esta ocasión que el incumplimiento con dicho requisito es subsanable, acompañando la querella dirigida por la Secretaria de Justicia al Panel sobre el Fiscal Especial Independiente con declaraciones juradas obtenidas posteriormente durante el proceso de la investigación preliminar realizada por el Departamento de Justicia. Tal curso de acción elimina por fíat judicial un requisito o condición establecido por estatuto, que responde a un genuino interés público y a un fin socialmente útil. Respetuosamente, DISIENTO.

I

El 16 de noviembre de 2001, el señor Jorge Colberg Toro, entonces Secretario General del Partido Popular Democrático, dirigió a la honorable Anabelle Rodríguez, Secretaria del Departamento de Justicia de Puerto Rico, la carta siguiente:

Hon. Anabelle Rodríguez

Secretaria

Departamento de Justicia

Estimada Secretaria:

Como es de su conocimiento, el Sr. Juan Manuel Cruzado Laureano ha sido acusado por un Gran Jurado Federal por varios delitos relacionados a alegados actos de corrupción. El señor Cruzado Laureano, además de ser Alcalde del Municipio de Vega Alta, era Presidente del Comité Municipal del Partido Popular Democrático en dicho Municipio.

**Una vez sale a la luz pública las acusaciones con [sic] el señor Cruzado Laureano, el Partido Popular Democrático procedió a suspenderlo sumariamente de todas las posiciones de liderato y además, se requirió la cancelación y entrega de información relacionada a cuentas bancarias abiertas a nombre del Comité Municipal de Vega Alta del Partido Popular Democrático.**

Durante ese procedo de revisión hemos obtenido información en el sentido de que documentos de esa cuenta bancaria han desaparecido. Asimismo, que en esa cuenta bancaria se depositaron y retiraron fondos de la misma, sin que se tenga constancia clara el origen o el propósito para los cuales que [sic] fueron utilizados.

Dado el hecho de que el señor Cruzado Laureano alegadamente utilizó cuentas bancarias para realizar transacciones contrarias a la ley, solicitamos que el Departamento que usted dirige, intervenga y examine la cuenta del Comité Municipal del Partido Popular Democrático de Vega Alta que está registrada en la Sucursal del Banco Popular de ese Municipio. **(Énfasis nuestro.)**

**Nos vemos imposibilitados, sin embargo, en proveer el número de dicha cuenta bancaria dado el hecho de que no tenemos esa información.**

Hacemos esta solicitud por entender que esta institución, el Partido Popular Democrático, tiene un firme compromiso de combatir la corrupción y tiene además, una obligación moral de proteger el buen nombre y el prestigio de esta organización política.

Reciba mis mejores deseos.

Cordialmente,

(fdo.) Jorge Colberg Toro

Secretario General

El Artículo 4 de la Ley Núm. 2, supra, dispone lo siguiente:

(1) El Secretario de Justicia llevará a cabo una investigación preliminar en todo caso en que reciba información bajo juramento que a su juicio constituya causa suficiente para investigar si se ha cometido cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público, por alguno de los siguientes funcionarios:

(a) El Gobernador;

(b) los Secretarios y Subsecretarios de Departamento del Gobierno;

**(c) los jefes y subjefes de agencias;**

**(d) los Directores Ejecutivos de las corporaciones públicas;**

(e) los Alcaldes;

**(f) los miembros de la Asamblea Legislativa de Puerto Rico;**

**(g) los asesores y ayudantes del Gobernador;**

**(h) jueces, y**

**(i) todo individuo que haya ocupado cualesquiera de los cargos antes enumerados, a quien se le impute la comisión de cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público, mientras ocupaba uno de los cargos enumerados, sujeto a que la designación del Fiscal Especial se haga dentro de los cuatro (4) años siguientes a la fecha en que dicho individuo cesó en su cargo. La fijación de este plazo en nada altera el término prescriptivo de la acción criminal que corresponda contra el funcionario o individuo.**

**(2)** Siempre que el Secretario de Justicia conduzca una investigación preliminar con relación a la situación de cualesquiera de los funcionarios o individuos enumerados en el inciso

(1) anterior, el Secretario determinará, a base de la información disponible y los hechos alegados, si existe causa suficiente para creer que se ha cometido cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público. **El Secretario de Justicia no podrá recomendar ni el Panel autorizar la designación de un Fiscal Especial cuando los delitos alegados están prescritos.** Luego de completada la investigación preliminar, el Secretario rendirá un informe detallado de tal investigación al Panel sobre el Fiscal Especial, el cual será nombrado conforme a las disposiciones de la sec. 99g de este título. Dicho informe contendrá recomendaciones del Secretario sobre si procede o no la designación de un Fiscal Especial. Aun cuando la recomendación del Secretario fuere la de que no se designe un Fiscal Especial, éste vendrá obligado a referir su informe y el expediente completo del caso al Panel, el cual podrá a su discreción nombrar un Fiscal Especial y ordenar la investigación del caso.

(3) Cuando se conduzca una investigación con relación a actuaciones de cualesquiera de los funcionarios o individuos enumerados en el inciso (1) anterior, de ser necesaria la radicación de denuncias o acusaciones esta acción no podrá ser conducida por el Secretario de Justicia,

recayendo siempre tal responsabilidad en el Fiscal Especial que designe el Panel.

**Cuando el Secretario de Justicia llegue a una determinación de si recomienda o no el nombramiento de un Fiscal Especial lo notificará al querellante que solicitó el nombramiento del Fiscal Especial y al funcionario a quien se solicita investigar.**

(4) En aquellos casos en los cuales el Secretario de Justicia entienda que la información recibida contra cualquiera de los funcionarios o individuos enumerados en el inciso (1) anterior no constituye causa suficiente para investigar así lo notificará al Panel sobre el Fiscal Especial, indicando los fundamentos que justifican su decisión.

(5) El Contralor de Puerto Rico, el Director de la Oficina de Ética Gubernamental o el querellante podrá solicitar al Panel dentro de quince (15) días a partir de la notificación recibida que revise la negativa del Secretario de Justicia a solicitar un Fiscal Especial. Igualmente, el funcionario a ser investigado podrá solicitar al Panel dentro de los quince (15) días a partir de la notificación recibida que revise y no confirme la recomendación del Secretario de Justicia de que se designe un Fiscal Especial.

Si el Panel determinare que no procede el nombramiento de un Fiscal Especial dicha determinación será final y firme y no podrá radicarse querella nuevamente por los mismos hechos.

(6) En caso de que el Panel determine que la información recibida ha sido frívola, el Panel le impondrá a la persona que presentó la misma todos los costos incurridos en los procedimientos realizados a tenor con las disposiciones de las secs. 99h a 99z de este título. El Estado reembolsará a todo funcionario objeto de una investigación que sea exonerado una cantidad razonable por concepto de los gastos incurridos en honorarios de abogado, excepto en los casos de exoneración por motivo de la prescripción del delito imputado. **(Énfasis nuestro.)**

**El Artículo 5 de la Ley Núm. 2 de 23 de febrero de 1988,[8] según enmendada, dispone lo siguiente:**

(1) Cuando el Secretario de Justicia recibiere información que a su juicio constituyera causa suficiente para investigar si algún funcionario, ex funcionario, empleado, ex empleado o individuo no enumerado en la sec. 99k de este título ha cometido cualesquiera de los delitos a que se hace referencia en la sec. 99k de este título podrá, a su discreción, efectuar una investigación preliminar y solicitar el nombramiento de un Fiscal Especial cuando

---

[8] **3 L.P.R.A. sec. 99l.**

determine que, de ser la investigación realizada por el Secretario de Justicia, podría resultar en algún conflicto de interés.

(2) Cuando el Secretario determine que no existe conflicto de interés alguno que impida la investigación objetiva por parte del Departamento de Justicia, en tal caso el Secretario designará el funcionario que conducirá la investigación y el Departamento de Justicia asumirá jurisdicción sobre la misma.  **(Énfasis nuestro.)**

**El Artículo 8 de la Ley Núm. 2 de 23 de febrero de 1988,[9] según enmendada, dispone lo siguiente:**

(1) Para determinar si existe causa para conducir una investigación preliminar, el Secretario de Justicia tomará en consideración los siguientes factores:

(a) La seriedad de la imputación que se hace;

(b) el grado de participación que se imputa al funcionario o ex funcionario, empleado o ex empleado;

(c) los datos y hechos en que esté basada la imputación;

---

**[9] 3 L.P.R.A. sec. 99o.**

(d) la credibilidad de la persona que formula la imputación y de otras fuentes de información.

**(2) Se considerará causa suficiente para investigar, a los fines del inciso (1) de esta sección, cualquier informe del Contralor o de la Oficina de Ética Gubernamental recomendándole al Secretario de Justicia la radicación de cargos criminales contra cualquiera de los funcionarios cubiertos por las disposiciones de las secs. 99h a 99z de este título.**

(3) En todo caso en que el Secretario de Justicia reciba una querella de cualquier fuente, imputando alguna violación a un empleado, funcionario, ex empleado o ex funcionario cubiertos por la sec. 99l de este título, el Secretario notificará al Panel de tal querella y de la investigación que ha de conducir.

(4) Cuando el Secretario de Justicia determine que procede realizar una investigación preliminar, éste completará dicha investigación preliminar dentro de un término que no exceda de noventa (90) días contados a partir de la fecha en que recibe la información. En aquellos casos en los que el Departamento de Justicia considere que, por su naturaleza o complejidad, no ha sido posible completar adecuadamente la investigación preliminar en dicho término podrá solicitar, y el Panel a su discreción podrá concederle, un

término adicional que no excederá de noventa (90) días.

**(5) Durante el transcurso de una investigación preliminar el Secretario de Justicia no podrá conceder inmunidad ni negociar alegaciones preacordadas con funcionarios, empleados, ex funcionarios o ex empleados que sean objeto de dicha investigación. El Secretario, sin embargo, podrá ejercer tales prerrogativas en aquellos casos donde una vez concluida la investigación preliminar asuma, bajo las disposiciones de las secs. 99h a 99z de este título, la jurisdicción para la investigación a fondo y encausamiento de la querella o imputación radicada.**

(6) El Panel podrá revisar cualquier determinación del Secretario emitida de conformidad con lo dispuesto en la sec. 99*l* de este título y determinará si procede el nombramiento de un Fiscal Especial que lleve a cabo la investigación y procesamiento que sea necesario para la disposición de tal querella y ello sujeto a lo dispuesto en la sec. 99p de este título. **(Énfasis nuestro.)**

**Una vez más reiteramos las normas de hermenéutica que nos guían en nuestro ministerio de interpretar las leyes. Al descargar nuestra función de interpretar una disposición particular de un estatuto, los tribunales debemos siempre considerar cuáles fueron los propósitos perseguidos por la**

**Asamblea Legislativa al aprobarlo, de manera que nuestra interpretación asegure la efectividad de la intención que lo anima.**[10]  En esta búsqueda acudimos primero al texto de la ley, ya que cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu.[11]  Ante un lenguaje claro e inequívoco del legislador, el texto de la ley es la expresión por excelencia de la intención legislativa.[12]  La literalidad de una ley sólo puede ser ignorada cuando ésta es claramente contraria a la verdadera intención o propósito legislativo.[13]  **En segunda instancia debemos consultar el historial del estatuto.**[14]  **La Exposición de Motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo.**[15]  **Debe tomarse en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar en general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno, entre otros.**  Por último,

---

[10] _Irizarry v. J&J Cons. Prods., Co., Inc._, res. el 27 de enero de 2000, 2000 T.S.P.R. 15, 150 D.P.R. ___ (2000), 2000 J.T.S. 27; _Dorante v. Wrangler of P.R._, 145 D.P.R. 408 (1998); _Vázquez v. A.R.P.E._, 128 D.P.R. 513 (1991).

[11] 31 L.P.R.A. sec. 14.

[12] _Irizarry v. J&J Cons. Prods. Co., Inc._, _supra_.

[13] _Sucn. Álvarez v. Srio. de Justicia_, res. el 11 de febrero de 2000, 2000 T.S.P.R. 21, 150 D.P.R. ___ (2000), 2000 J.T.S. 40; _Pueblo v. Zayas Rodríguez_, 147 D.P.R. 530 (1999).

[14] _Piñero v. A.A.A._, 146 D.P.R. 890 (1998).

[15] _Pueblo v. Zayas Rodríguez_, _supra_.

en el proceso de encontrar el significado de una ley que logre los propósitos del legislador, la interpretación debe hacerse con fines socialmente útiles.[16]

La exposición de motivos de la Ley Núm. 2 de 23 de febrero de 1988,[17] lee de la forma siguiente:

Puerto Rico ha sido un pueblo con un acervo envidiable por su tradición cultural, su compromiso inexorable con los principios fundamentales de convivencia democrática y, especialmente, la adhesión inquebrantable a los más preciados valores éticos y morales consubstanciales en la conducta de nuestra gente y en la de sus representantes en la función gubernamental: los servidores públicos.

Nuestro pueblo tiene el convencimiento de que, como regla general, los órganos de gobierno han cumplido con su responsabilidad conforme a las exigencias más rigurosas de moralidad y excelencia.

No obstante, por excepción, en ocasiones, servidores públicos hacen abstracción de estas sanas normas de moralidad y ética e incurren, ya sea en flagrante infracción a la ley o en prácticas malsanas e intolerables. Tales actuaciones indebidas generalmente suponen lucro ilegal en detrimento del patrimonio del estado, conflicto de intereses, especialmente financiero o acciones improcedentes de diversa índole.

---

[16] Íd.

[17] 3 L.P.R.A. sec. 99h et seq.

**La proliferación de prácticas de la naturaleza de las reseñadas ha creado una honda preocupación, no sólo en nuestro pueblo sino también en los que somos depositarios de su confianza por haber sido investidos de los poderes apropiados para proveerle a nuestro país una gestión ejemplar de gobierno.**

En el descargo de esa honrosa responsabilidad, y a los fines de prevenir, erradicar y penalizar cualquier comportamiento delictuoso o indebido por cualquier funcionario gubernamental es imperativo que esta medida legislativa, que es componente esencial de un esquema integral e innovador, sea aprobada con el propósito de restaurar la confianza del pueblo en su gobierno y en sus servidores públicos.

El mecanismo de Fiscal Especial Independiente, bajo la supervisión de un Panel nombrado por el Gobernador del Estado Libre Asociado de Puerto Rico y compuesto exclusivamente por Ex Jueces del Tribunal Supremo o Superior o de ambos, garantiza la absoluta objetividad de investigaciones contra altos funcionarios del Gobierno. De igual importancia, la institución del Fiscal Especial Independiente y del Panel provee un foro neutral e independiente para dilucidar palpablemente ante el pueblo supuestos o reales actos indebidos atribuibles a funcionarios gubernamentales,

creándole así a funcionarios honestos un medio efectivo para preservar su integridad y reputación. **(Énfasis nuestro.)**

**El 29 de enero de 1988 las Comisiones de lo Jurídico Penal, de lo Jurídico Civil, de Gobierno y de Hacienda de la Cámara de Representantes introdujeron en su Tercer Informe Conjunto a dicho cuerpo legislativo, con relación al Sustitutivo P. del S. 931 una enmienda al Artículo 4 de dicho proyecto de ley para que la información que le fuera sometida al Departamento de Justicia sobre cualquiera de los funcionarios públicos allí enumerados, y que diera motivo a una investigación preliminar, tenía que producirse bajo juramento.**

**Durante el procedimiento y debate acaecido el 29 de enero de 1988 ante el hemiciclo de la Cámara de Representantes de Puerto Rico, sobre el sustitutivo del P. del S. 931, se hicieron las expresiones siguientes:**

...

**SR. VARELA FERNANDEZ: Señor Presidente.**

**SR. PRESIDENTE: Señor Representante Varela Fernández.**

**SR. VARELA FERNANDEZ: Está ante la consideración del Cuerpo el Sustitutivo al Proyecto del Senado 931, con un Tercer Informe, que contiene enmiendas, de las Comisiones de lo Jurídico Penal, Jurídico Civil, Gobierno y Hacienda.**

Ante la consideración de este Cuerpo las enmiendas que contiene dicho Informe.  Que se aprueben las mismas.

SR. PRESIDENTE: A la moción para que se aprueben las enmiendas presentadas por las cuatro Comisiones informantes, contenidas en dicho Informe, ¿hay objeción?  No habiendo objeción, se aprueban las enmiendas del Informe.

SR. SANTIAGO GARCÍA: Señor Presidente.

SR. PRESIDENTE: Señor Representante Santiago García.

SR. SANTIAGO GARCIA: Solicitamos un receso de un minuto.

SR. PRESIDENTE: Se decreta un receso de un minuto.

RECESO

A moción del Señor Santiago García, la Cámara acuerda declarar un receso de un minuto.

Transcurrido el receso, se reanuda la sesión bajo la Presidencia del señor Jarabo.

SR. SANTIAGO GARCIA: Señor Presidente.

SR. PRESIDENTE: Señor Representante Santiago García.

SR. SANTIAGO GARCIA: Proponemos que se deje sobre la mesa brevemente la consideración del Sustitutivo al Proyecto del Senado 931.

SR. PRESIDENTE: ¿Alguna objeción?  No habiéndola, así se acuerda.

El Presidente va a sustituir en el Comité de Conferencia designado a los Representantes Rosa Guzman [sic] y López Galarza por los Representantes Santiago García y Ramírez.  Quedan designados para formar parte del Comité de Conferencia.

SR. SANTIAGO GARCIA: Señor Presidente.

SR. PRESIDENTE: Señor Representante Santiago García.

SR. SANTIAGO GARCIA: Proponemos que se continúe, se reanude la discusión del Sustitutivo del Proyecto del Senado 931.

SR. PRESIDENTE: ¿Hay alguna objeción?  No habiéndola, así se acuerda.

SR. VARELA FERNANDEZ: Señor Presidente.

SR. PRESIDENTE: Señor Representante Varela Fernández.

SR. VARELA FERNANDEZ: Para enmiendas adicionales, señor Presidente.

SR. PRESIDENTE: Adelante.

SR. VARELA FERNANDEZ: En la página 20, Artículo 19, línea 10, sustituir "Juez Presidente del Tribunal Supremo" por "Panel"

SR. PRESIDENTE: ¿Alguna objeción?  No habiendo objeción, aprobada la enmienda.

SR. VARELA FERNANDEZ: Segunda enmienda.  En la página 19, Artículo 17, segunda línea, añadir entre "podrán" y "destituidos" la palabra "ser".

SR. PRESIDENTE: Repita la ubicación de la enmienda.

SR. VARELA FERNANDEZ: En la página 19, segunda línea, una enmienda a la enmienda aprobada, y que se incluye en el Informe.  En la página 8 del Informe, añadir entre "podrán" y "destituidos" la palabra "ser".

SR. PRESIDENTE: ¿Alguna objeción?  No habiendo objeción, se aprueba la enmienda.

SR. VARELA FERNANDEZ: Señor Presidente.

SR. PRESIDENTE: Señor Representante Varela Fernández.

**SR. VARELA FERNANDEZ: Para unas expresiones antes de someter a la consideración del Cuerpo este Proyecto.**

**SR. PRESIDENTE: Adelante con su turno de exposición.**

**SR. VARELA FERNANDEZ:** Compañeros miembros de la Cámara de Representantes, está ante la consideración del Cuerpo este Proyecto que ha de establecer un panel sobre el Fiscal Especial que habrá de ser un mecanismo eficaz para garantizar la objetividad en las investigaciones de los altos funcionarios del Gobierno de Puerto Rico. Históricamente nuestro pueblo se ha distinguido porque sus servidores públicos siempre se distinguen por su honradez, por su integridad. En ocasiones este historial ha sido manchado por servidores inescrupulosos, y esto, claro está, afecta la imagen de los servidores públicos. **A través de este Proyecto estamos creando un panel nombrado por el Gobernador de Puerto Rico y constituido por tres exjueces del Tribunal Supremo, o del Tribunal Superior, y confirmados por la Cámara de Representantes y el Senado de Puerto Rico por la mayoría de sus miembros. Igual mayoría se reclama para la posición de Contralor, para así establecer la importancia que tienen los miembros de este panel del Fiscal Especial.**

**Más aún, al igual que el Secretario de Estado, también está requerido que se apruebe por ambos Cuerpos.** Este panel tiene a su cargo la designación de los Fiscales Especiales que se encargarán de estudiar, de investigar y de radicar las correspondientes denuncias y acusaciones contra aquellos funcionarios que se mencionan en la propia ley (sic). Entre los cuales sobresalen el propio Gobernador, los legisladores, los alcaldes, los jueces, los asesores y ayudantes del gobernador y cualquier otra persona que haya ocupado estas posiciones y que se haya nombrado Fiscal Especial en los cuatro años posteriores a que cesara su cargo. Estos fiscales especiales podrán ser removidos por el propio panel, por causa debidamente establecida en la misma ley. Es necesario puntualizar la importancia del panel para que sirviendo de un foro de revisión de las decisiones del Secretario de Justicia, el cual podrá hacer una investigación preliminar en aquellas situaciones en las cuales haya recibido información bajo juramento sobre la conducta de los funcionarios anteriormente mencionados. Luego que hace esa determinación solamente el fiscal nombrado por el panel podrá llevar a cabo la correspondiente denuncia.

**Más todavía, independientemente no haya hecho una recomendación positiva la parte querellante o en su oportunidad el Contralor o el Director de la Oficina de Etica Gubernamental,**

**podrá solitar [sic] revisión para que a su vez el panel pueda considerar la situación particular para que se nombre el fiscal en esa situación específica**. Uno de los propósitos particulares de este Fiscal Especial y de este panel es evitar que el propio Secretario de Justicia, funcionario a cargo de radicar la denuncia en el Gobierno de Puerto Rico, se pueda investigar a sí mismo. Es por eso que se solicita y se establece que toda información relacionada contra el Secretario de Justicia deberá ser sometida directamente al panel. Este concepto, este mecanismo, que es una prueba clara de la intención de este gobierno buscar la máxima fiscalización y evitar hasta en la mayor medida posible la investigación, una investigación subjetiva y prejuiciada, establece este mecanismo para que de esta forma se puedan canalizar las preocupaciones, las denuncias y las querellas que pudieran tener los ciudadanos en contra de los altos funcionarios de este gobierno. **Es necesario puntualizar que el panel como tal podrá hacer y nombrar al Fiscal Especial en otra circunstancia que se menciona en el Artículo 11 del Proyecto**. Es necesario también el puntualizar que el Secretario de Justicia, siempre y cuando no haya conflicto de intereses, podrá radicar las denuncias contra otros funcionarios que se mencionan en el Artículo 5, pero reconociendo que toda querella sobre ese asunto debe ser de conocimiento del panel. Una de las enmiendas principales que se le hace a este Proyecto es la limitación de las acciones

que puede llevar el Fiscal. El Fiscal se debe limitar a acciones de carácter criminal, de carácter grave y aquellas menos graves que se encuentran en la misma transacción. Y además aquellos delitos que se mencionan específicamente en el Proyecto y que reflejan que tienen el interés de evitar la corrupción en el gobierno. Es necesario puntualizar que aunque no está facultado el Fiscal Especial para instar acciones civiles o administrativas, podrá y deberá enviar los informes correspondientes a aquellos organismos que actualmente tienen esa responsabilidad. De esta forma se complementa el servicio que puede prestar este Fiscal Especial.

Un detalle que es de mucha importancia es la ligereza que se quiere dar a toda investigación de esta clase. Se le concede un término fijo al Secretario de Justicia para que haga la investigación preliminar debiendo solicitar una prórroga en aquellos casos que sea necesario, y también al Fiscal Especial se le concede un término de noventa días pudiendo solicitar una prórroga adicional en caso que también fuera necesario. Sí, lo que se plantea es la ligereza, pero a la misma vez la seriedad, y también se le da la independencia económica para que pueda hacer la investigación correspondiente.

Es decir, que tenemos un panel, y un fiscal, que tiene el poder de revisión sobre el Secretario de Justicia, que tiene independencia

económica, que está integrado por funcionarios probos, honestos, que le han servido a este pueblo, que han pasado por el cedazo del Senado de Puerto Rico, haber sido jueces en el Sistema Judicial de Puerto Rico, y es en ese sentido que esa reputación, esa valía que tienen le añade mayor peso a este panel y a los fiscales especiales que van a ser designados. La propia disposición en relación a la encomienda que le puede dar el panel a los fiscales establece claramente las encomiendas adicionales que le puede dar a cada fiscal. **En el sentido de que para evitar innecesariamente la multiplicidad de nombramientos de fiscales, estos podrán asumir responsabilidad en asuntos que el panel entienda que, aunque distintos, deban ser investigados por el mismo Fiscal Especial.**

...

Señor Presidente, la figura del Fiscal Especial surge en Estados Unidos luego del escándalo de Watergate, donde quedó comprobado que aun cuando el sistema de separación de poderes funcionó para el enjuiciamiento a nivel del proceso establecido por la Constitución, de residenciamiento del Presidente, en la administración de la justicia para investigar y procesar altos funcionarios del gobierno no fue suficiente el trabajo que se hizo a nivel del Procurador General de los Estados Unidos,

equivalente al Secretario de Justicia en Puerto Rico.

**La destitución de aquel Fiscal Especial, de nombre Archibal[d] Scott [Cox], destituido por Bold [Bork] ante la negativa de Richardson, produjo en los Estados Unidos un revuelo tal que cobró fuerzas a nivel congresional la necesidad de establecer un mecanismo que permitiera investigar de forma independiente altos funcionarios del gobierno sin que estuviesen sujetos al control, la supervisión o la manipulación de las fuerzas políticas, de los lideratos políticos, y surgió la figura del Fiscal Independiente. Surgió ese estatuto, predicado en la disposición de la Constitución federal, que permite asignar a los tribunales de justicia la facultad de hacer nombramientos. Algo que ya se había hecho en legislación anterior. Se estuvieron nombrando fiscales especiales, a la luz de este estatuto, para los casos de Deaver, el caso de North, el caso de Irán-Contras, fiscales que aun están funcionando. Desde el principio empezaron a atacar el estatuto desde el punto de vista constitucional porque, tenía la anomalía del estatuto de que envolvía a la Rama Judicial en el nombramiento, supervisión y final destitución de esos fiscales especiales.**

...

Esta legislación representa un intento de crear una figura que resulta híbrida, como consecuencia inevitable del propósito de la legislación, porque se trata de hacer una exclusión, una excepción del procedimiento normal a través del cual se hacen cumplir las leyes y se procesan causas criminales para tratar aquellos casos en que estén envueltos figuras que forman parte de la jerarquía gubernamental. El propósito de esa exclusión, de esa excepción, es garantizar, hasta donde sea humanamente posible, la imparcialidad y objetividad de ese proceso, o dicho en palabras más sencillas, evitar que el investigador se investigue a sí mismo logrando un puente, al decir "a sí mismo" en que está investigando una figura del gobierno a personas que forman parte de la estructura gubernamental, sean de Mayoría o de Minoría, de gobierno de oposición, no viene al caso. Pero ese es el principio detrás de eso.

Lo de la independencia, Fiscal Especial Independiente, viene del deseo de que esa figura que en definita [sic] se nombre para llevar a cabo las investigaciones cuando así se entiende que proceda, tenga libre albedrío y no sea un funcionario corriente que ha recibido un nombramiento de quienes son sus superiores y que vive de esa compensación, sino que tenga una libertad de acción y de criterio que se presume que un funcionario corriente dentro de la jerarquía ordinaria del servicio público no

tendría en estos casos específicos. Eso es lo que presume este tipo de legislación, tanto en Estados Unidos como aquí. Podríamos estar toda la noche analizando si las presunciones son correctas o no, baste enumerarlas axiomáticamente, sin cuestionarlas, porque es lo que está detrás de la legislación. Por eso el Proyecto original que llega a la Cámara pone el nombramiento del panel, que es un organismo que se diseña como un protector o divisor entre la jerarquía gubernamental y el Fiscal Especial nombrado, y que a la vez sirve de cedazo para pasar juicio, revisar o revocar las recomendaciones del Secretario de Justicia, que tiene una participación en ese proceso. **(Énfasis nuestro.)**

...

**Durante el procedimiento y debate acaecido el 31 de enero de 1988 ante el hemiciclo del Senado de Puerto Rico sobre las enmiendas realizadas por la Cámara de Representantes al sustitutivo P. del S. 931, se hicieron las expresiones siguientes:**

**SR. ORAMA MONROIG: Señor Presidente, voy a volverle a votar a favor a esta medida. Razones sencillas y el corto tiempo que tenemos nos obliga a andar de prisa.**

**Número uno, este es un compromiso serio para enfrentar un mal muy serio que ha padecido el País en los últimos tiempos, muy particularmente.**

Y es el mal de la corrupción, y efectivamente, este es un mecanismo adecuado en ley para combatir ese mal.

Y esto arranca de los tiempos históricos de Watergate. Y me parece que el distinguido penalista, don Rolando Silva Iglecia, pues cuando se opuso originalmente diciendo que el proyecto era inconstitucional, ahora se contradice él mismo. Dice que la Corte de Circuito de Washington le dio la razón, porque en aquella ocasión el panel lo nombraba el señor Juez Presidente del Tribunal Supremo. Ahora, eso que pudiere ser una falla constitucional se corrige, porque nuestro sistema constitucional de gobierno, los nombramientos lo hace el Gobernador.

En el caso de los Estados, como el Estado Libre Asociado de Puerto Rico. En el caso de los Estados Unidos lo hace el señor Presidente de la Nación y lo confirma el Senado. En el caso de Puerto Rico, algunos nombramientos por excepción son confirmados por Cámara y Senado. Y para corregir eso que pudiere ser un ataque constitucional válido, pues, entonces, en el proyecto ahora, precisamente el nombramiento recae, donde recaen todos los nombramientos de alto funcionario en materia constitucional, en el señor Gobernador.

Y la confirmación que de ordinario es por el Senado, en este caso, igual que en el caso del Contralor, se hace por el Senado y la Cámara de Representantes y tiene que ser por Mayoría absoluta. Alguien dijo por ahí que una simple mayoría, no mayoría absoluta, más de la mitad de los miembros del Senado y más de la mitad de los miembros de la Cámara.

Yo no sé a qué Escuela de Derecho, es que se aferran los compañeros constitucionalistas aquí, al hablar de que tiene que ser por consenso. Pues, mire, no, a los Jueces del Tribunal Supremo de Puerto Rico, quién los nombra? Quién los nombra? El señor Gobernador. Y quiénes los confirmamos? Los miembros del Senado nada más.

En este caso, y nadie aquí osaría poner en duda la independencia de criterio de los señores Jueces del Tribunal Supremo. Y qué me podrían contestar? Que los señores Jueces del Supremo se nombran de por vida, y que este panel de tres (3) Jueces, se nombra de tres (3) Ex-jueces, se nombra por 3 años. Pero, y qué, a quiénes se nombra? A muchachos bisoños que acaban de terminar la escuela de derecho y recien [sic] aprueban la reválida de abogados? A muchachos bisoños que fueron nombrados jueces municipales?

A muchachos bisoños que fueron nombrados fiscales auxiliares de Distrito, Fiscales Especiales? No señor. Se nombra un panel de Ex-

Jueces, o del Tribunal Supremo o Ex-Jueces del Tribunal Superior, que son señores y señoras independientes ya, aseguradas sus vidas, moral, social, política, religiosa, económicamente en toda su forma y que pueden actuar como actúan con absoluta independencia en sus criterios. De eso es de lo que se trata, pero no podemos aquí, menoscabar la facultad del señor Gobernador para hacer nombramientos. Pero y de qué derecho constitucional es que se trata?

En derecho constitucional el a, b, c, del mismo, en el sistema democrático de vida y bajo el régimen constitucional que nos cobija, es el Primer Ejecutivo, el primer mandatario del País, o de la nación el que hace los nombramientos y es el Cuerpo Legislativo mayor, de mayor antiguedad [sic] que es el Senado el que confirma.

Pero en este caso es más, don Rubén y don "Rolo", en este caso es, Cámara y Senado los que confirman y no hay duda alguna, de que en esa forma, el vicio constitucional que pudiere traerse por vía del caso que ha sido resuelto en una votación dividida de dos a una en la Corte Circuito de Washington, pues, está totalmente curado. Pero aún así, yo sostengo que como estaba aprobado el Proyecto en su día iba a pasar el crisol constitucional ante el Tribunal Supremo de los Estados Unidos, si es que llegaba allá.

**Claro, si hemos optado por enmendarlo en esta forma para conformarlo con la decisión del Tribunal de Washington que no nos obliga dicho sea de paso. Claramente para récord legislativo, que no nos obliga jurídica ni constitucionalmente. Pero salvado ese escollo, por si acaso, no hay la menor duda que salvado ese escollo este Proyecto es absolutamente constitucional cumple con el compromiso de enfrentar claramente la cuestión de la corrupción. Pero, debemos advertir también y es mi posición para el récord y quiero que forme parte del récord legislativo, que no se debe entender tampoco que cualquier ciudadano caprichosamente y viciosamente formula querella contra un funcionario y que eso pone fuera de toda duda un funcionario en condiciones muy difíciles ante la opinión pública y ante el país.**

Sobre ese particular, compañero Peña Peña, va a referirse al récord, pero yo quiero también dejarlo de manifiesto que no se trata de que los funcionarios públicos que constitucionalmente estamos sujetos a todo tipo de críticas realmente, que se vaya a entender como una licencia para llevar querellas frívolas contra cualquier funcionario público. Que esta querella tiene que hacerse bajo juramento, naturalmente, que llegará ante el Secretario de Justicia, que el Secretario de Justicia hará una determinación preliminar, una especie de causa probable, que rendirá un informe al panel de tres (3) ex-

jueces, sea del Superior o del Supremo, y que ese panel determinará si confirma o revoca al señor Secretario de Justicia y nombra entonces al fiscal especial independiente para que siga todo el proceso.

**Señor Presidente, consideramos que esta legislación enmendada como está cruza toda posibilidad siquiera de ataque constitucional y es un magnífico instrumento que esta administración pública, de limpieza pública, para asepsia pública lleva a los códigos y a los estatutos de Puerto Rico para asegurar que Puerto Rico tenga como es nuestra tradición democrática la mejor limpieza en los manejos de los asuntos públicos en Puerto Rico. Voy a votar a favor de esta medida así enmendada.**

**SR. VICEPRESIDENTE: Quiero señalar que el compañero utilizó nueve (9) minutos, compañero senador, con Joaquín Peña Peña quiere hacer una expresión dentro del marco que teníamos vamos a conceder dos minutos o tres minutos.**

**SR. PEÑA PEÑA: Señor Presidente.**

**SR. VICEPRESIDENTE: Señor senador, don Joaquín Peña Peña.**

**SR. PEÑA PEÑA: Distinguidos compañeros del Senado. Quiero señalar que, yo he de votar a favor de esta medida ya que entiendo que esta es**

una medida o esta es una institución que es necesaria dentro del sistema de nosotros en Puerto Rico. Porque va a darle una oportunidad al ciudadano de formular una querella y que se investigue adecuadamente esa querella ante un foro que, realmente, como está escrita la Ley y formulada pues, va a ser una investigación donde se va a considerar de una forma como señalé antes valiosa y adecuada. Y esa persona, ese ciudadano pues, va a sentir confianza en esa institución de fiscal especial de la forma en que está escrita la medida.

Pero, tengo una preocupación, señor Presidente, y a esos fines pues, quisiéramos hacer unas preguntas al distinguido compañero "Pincho" Izquierdo. A los fines de que dejemos claro el récord, de cuál es la situación que procedería cuando una persona, un ciudadano lleva una querella ante el fiscal, ante el Secretario de Justica [sic] y entonces el Secretario de Justicia notifica al panel y el panel no encuentra causa probable y pues, entiende o se entendiese en ese caso específico que esa querella fuese de naturaleza frívola. Conocemos que esa persona por la situación que comentó el compañero Orama Monroig, pues definitivamente, esa querella sería bajo juramento.

Esa querella al aparecer frívola podría necesariamente tener unas connotaciones que aparecen en el Código Penal y también, podría

llevarse una acción civil en contra de esa persona. Eso, específicamente, ese derecho que tendría el funcionario público a llevar esa acusación o esa denuncia ante el foro correspondiente o esa acción civil ante los tribunales no aparece dentro de la medida. O sea, que el funcionario aparentemente como está contemplada la ley no conocerá ni la persona que radica la querella, tampoco conocerá de que puede estar sujeto a que pueda ser sancionado criminalmente ante un tribunal o que también podrá ser demandado civilmente por ese funcionario público a quien él le imputó esos hechos cuando eran frívolos y cuando no era cierta la querella que llevó contra ese funcionario público. Quisiéramos que el compañero "Pincho" Izquierdo nos dijera por qué razón no aparece eso dentro de la medida, qué razones hay?

SR. IZQUIERDO STELLA: Porque los derechos que pueda tener el funcionario civilmente para establecer, llevar cualquier acción a los tribunales, no los pierde mediante este proyecto. O sea, quedan los derechos que pueda tener, o los derechos que pueda tener para incoar una acción criminal y acusar a la persona por haber hecho una declaración jurada falsa que es un delito criminal. O sea, que éstas son cosas que están en el Código Penal y en el Código Civil y el funcionario las puede utilizar, por eso no están incluidas aquí, porque son derechos que uno tiene

al litigar en los tribunales en su carácter civil o criminal.

SR. PEÑA PEÑA: Compañero, pero no sería una situación más clara para el querellante que pudiera ser víctima de unos manejos por parte de algún partido político específico y que trayese a colación.

**SR. VICEPRESIDENTE: Señor Senador.**

**SR. PEÑA PEÑA: ... esa situación...**

**SR. REXACH BENITEZ: Señor Presidente, una cuestión de orden.**

**SR. VICEPRESIDENTE: Plantee la cuestión de orden.**

**SR. REXACH BENITEZ: Yo estoy dispuesto a quedarme aquí después que pase la Votación escuchando las desquisiciones constitucionales del compañero Peña Peña. Pero creo que hay unas reglas de debate y que ya terminó el debate. Ustedes consumieron los veinte (20) minutos, Rubén Berríos consumió cinco (5) minutos y Rolo Silva diez minutos (10), lo que procede ahora es someter el asunto a Votación. Levanto la cuestión de orden.**

SR. VICEPRESIDENTE: El compañero ya terminó, el compañero está contestando esa última pregunta del compañero senador Peña Peña.

SR. RIVERA ORTIZ, G.: Señor Presidente.

SR. VICEPRESIDENTE: Señor Senador.

SR. RIVERA ORTIZ, G.: Perdóneme yo tengo que responder al planteamiento que ha hecho el Portavoz de la Minoría, y el portavoz de la minoría tiene virtualmente razón, virtualmente razón. Solamente yo voy a pedirle al señor Portavoz que hacemos unos acuerdos, que nos dé un minutito de cortesía para que él redondée [sic] la contestación de esa pregunta y sigamos adelante.

De hecho, el compañero Oreste Ramos le había formulado una pregunta también al compañero "Pincho" Izquierdo que me gustaría si nuestro compañero, así en materia de cortesía lo permite, porque el compañero tiene razón en materia de reglas de debate que el compañero redondée [sic] y explique las dos (2) cosas.

SR. VICEPRESIDENTE: Sí, sabemos cual habían sido los acuerdos, pero había cierta flexibilidad para todos los lados. Compañero, termine, contéstele al distinguido senador, con Joaquín Peña Peña.

**SR. PEÑA PEÑA**: Sí, por eso, para aclarar la pregunta. Si sucediera eso, que un partido político específico, manipulase a cualquier persona para que se querellare, entonces, esa persona como no tiene ante sí la disposición legal clara, de lo que podría sucederle, pues, entonces podría ser manipulado con más facilidad, si no apareciese ahí.

SR. IZQUIERDO STELLA: Cualquier persona que haga una declaración jurada falsa, sabe que está cometiendo un delito criminal y el funcionario tiene derecho a pedir que se le acuse. O sea, este derecho que tiene el funcionario en ningún momento desaparece por no haberlo mencionado en el proyecto de ley, pero vamos a dejar eso claro en la intención legislativa y le agradecemos que el compañero Peña Peña traiga esto a colación para que aparezcan estos derechos que aparecen en otros códigos y no se mencionan específicamente en el proyecto.

**SR. PEÑA PEÑA**: Gracias al compañero Izquierdo y gracias al señor Presidente.

SR. IZQUIERDO STELLA: Señor Presidente, en adición para redondear el pensamiento y coger medio minuto con la benevolencia de los compañeros, que sé que medio minuto no es una cosa que vaya a alterar la salida nuestra de aquí del Hemiciclo, quiero dejar claro, que en ningún momento el Secretario de Justicia puede bloquear

que se nombre un fiscal especial, porque el ciudadano, el Contralor o el oficial de ética tienen derecho a ir al panel de jueces para que se nombre.  O sea, que aunque el Secretario de Justicia diga que no procede el nombramiento de un fiscal, lo que dijo el compañero "Rolo" Silva no procede.  **(Énfasis nuestro.)**

...

**La Ley Núm. 2 de 23 de febrero de 1988, <u>supra</u>, se aprobó con el propósito expreso de prevenir, erradicar y penalizar cualquier comportamiento delictivo o indebido por cualquier funcionario gubernamental, y así restaurar la confianza del pueblo en su Gobierno y en sus servidores públicos.  La política pública del Gobierno de Puerto Rico va dirigida a fomentar la dedicación de sus funcionarios y empleados a la gestión y al servicio público honesto y excelente, tanto profesional como personalmente, donde el derrotero que se ha de seguir sea la dedicación absoluta al bienestar general y desarrollo integral del Pueblo de Puerto Rico.[18]**

**Para mantener y garantizar la más absoluta objetividad en las investigaciones por alegado comportamiento delictivo o indebido de los altos funcionarios, empleados del Gobierno y otras personas, la Asamblea Legislativa adoptó el mecanismo del Fiscal Especial Independiente, bajo la supervisión de un panel de ex jueces nombrados por el(la) Primer(a) Ejecutivo(a), para llevar a cabo la investigación**

---

[18] <u>Pueblo v. Rodríguez Santana</u>, 146 D.P.R. 860 (1998); <u>Pueblo v. Rexach Benítez</u>, 130 D.P.R. 273 (1992).

y, si es necesario, el procesamiento de la conducta de las personas señaladas por el referido estatuto.[19]

Las disposiciones de la Ley Núm. 2, supra, se activan con la presentación de información juramentada ante el Secretario(a) de Justicia, excepto en los casos en que la conducta delictiva o indebida prohibida en la ley se le imputa al Secretario(a) de Justicia, en cuyo caso se presenta la querella directamente al Panel de ex jueces. En tal caso, si se presentara en el Departamento de Justicia, este último debe remitirla directamente al Panel de ex jueces.[20]

El requisito de juramentación de la información dispuesto en el Artículo 4 de la Ley Núm. 2, supra, expone al querellante al delito de perjurio, de ser falsa la información brindada y disuade así la presentación de información o querellas frívolas y hostigantes contra los funcionarios públicos allí señalados. Dicho requisito es de estricto cumplimiento, porque resulta en una salvaguarda procesal valiosa para el funcionario público querellado, cuya reputación y credibilidad se intenta poner en tela de juicio ante la comunidad.[21] Dicho requisito no es jurisdiccional. Su incumplimiento no impide al(a la) Secretario(a) de Justicia iniciar una investigación preliminar, pero impide al Panel sobre el Fiscal Especial Independiente pasar juicio sobre la querella presentada por el Secretario(a) de Justicia hasta que este último subsane tal defecto.[22]

_____

[19] Íd.

[20] Íd.

[21] Íd.

[22] Íd.

En __Pueblo v. Rodríguez Santana__, _supra_, expresamos lo siguiente:

> ... **no basta con que el Secretario de Justicia reciba información bajo juramento, sino que es preciso que ésta constituya causa suficiente para creer que se ha cometido un delito grave.** La propia Ley Núm. 2, _supra_, dispone los factores que el Secretario de Justicia debe tener en cuenta para guiar su juicio y determinar si la información jurada provee una causa suficiente para iniciar una investigación. **Entre éstos se encuentran: la seriedad de la imputación, la credibilidad de la persona que la formula y los hechos en los que se fundamenta la imputación. La Ley Núm. 2, _supra_, dispone, además, que se considerará una causa suficiente para investigar cualquier informe del Contralor o de la Oficina de Ética Gubernamental en el que se recomiende al Secretario de Justicia la presentación de cargos criminales contra cualquiera de los funcionarios cubiertos por las disposiciones de dicha ley.** Art. 8(1)-(2) de la Ley Núm. 2, _supra_, 3 L.P.R.A. sec. 99o(1)-(2).

Una vez el Secretario de Justicia culmina la investigación preliminar, debe rendir un informe detallado al Panel con recomendaciones sobre si procede o no la designación de un F.E.I. Independientemente de la recomendación del Secretario de Justicia, el Panel tendrá discreción para nombrar un F.E.I. y ordenar la investigación del caso. Por otro lado, si como

resultado de la investigación es necesaria la presentación de denuncias o acusaciones, esta responsabilidad le corresponde exclusivamente al fiscal especial, no al Secretario de Justicia. Art. 4 de la Ley Núm. 2, *supra*, 3 L.P.R.A. sec. 99k. **(Énfasis nuestro.)**

**La Ley Núm. 2, <u>supra</u>, persigue un propósito específico, fomenta un bien general y a la misma vez protege derechos individuales. Veamos. Persigue el propósito específico de hacer viable la política pública del Gobierno de "prevenir, erradicar y penalizar" toda aquella conducta constitutiva de delito de ciertos funcionarios gubernamentales. Fomenta el bienestar general al perseguir la restauración de la confianza del Pueblo en su gobierno y en sus servidores públicos. Protege la reputación, el buen nombre y la credibilidad de aquellos servidores públicos probos y honestos, que con mucho sacrificio personal y familiar ofrecen y ponen su talento y tiempo al servicio del Pueblo de Puerto Rico. Establece un mecanismo de revisión por el Panel del Fiscal Especial Independiente del ejercicio por el Departamento de Justicia de su facultad investigativa sobre los funcionarios públicos señalados en el Artículo 4 de ese estatuto.**

**La Ley Núm. 2, en su Artículo 4, <u>supra</u>, le otorga al(a la) Secretario(a) de Justicia la facultad de investigar preliminarmente a altos funcionarios públicos del gobierno o ex funcionarios de la misma naturaleza, en aquellas situaciones en que reciba** información bajo juramento que constituya causa suficiente **para entender que se ha cometido algún delito grave o menos grave, de los allí contemplados.** Para determinar si la información

suministrada bajo juramento al Secretario(a) de Justicia provee causa suficiente, **este(a) último(a) debe evaluar la seriedad de la imputación contra el funcionario público o ex funcionario**, el grado de participación que se le imputa al mismo, los datos y hechos en que se basa la imputación y la credibilidad de la persona que formula la imputación, **y de otras fuentes de información.**

**Determinados los hallazgos de la investigación preliminar realizada por el(la) Secretario(a) de Justicia y considerada la** información juramentada constitutiva de causa suficiente, **suministrada inicialmente, se podrá, a petición de éste, realizar una investigación completa bajo la supervisión de un panel de ex jueces nombrado por el(la) Gobernador(a), de naturaleza imparcial y libre de cualquier conflicto de intereses entre los investigadores e investigados. Lo crucial en términos del propósito legislativo es que la facultad investigativa del(de la) Secretario(a) de Justicia quede sujeta a un proceso de revisión imparcial. Los hallazgos que éste realice a través de su investigación preliminar tienen que estar acompañados de** la información inicial sometida bajo juramento ante su consideración constitutiva de causa suficiente **para activar la maquinaria investigativa del Departamento de Justicia contra esa persona. De esta forma el Panel sobre el Fiscal Especial Independiente podrá descargar su ministerio, y supervisar la realización de una investigación completa e imparcial por un Fiscal Especial Independiente, dirigida a evaluar cualquier conflicto de intereses entre los investigadores e investigados.** [23]

**En** Pueblo v. Rexach Benítez, supra, **expresamos, interpretando la Ley Núm. 2,** supra, **que para mantener y**

---

[23] Pueblo v. Rexach Benítez, supra, págs. 295 y 296.

garantizar la más absoluta objetividad en las investigaciones por alegado comportamiento delictivo o indebido de los altos funcionarios, empleados del Gobierno y otras personas, la Asamblea Legislativa adoptó el mecanismo del Fiscal Especial Independiente, bajo la supervisión de un Panel de ex jueces, nombrados por el Gobernador(a), para llevar a cabo la investigación y, si es necesario, el procesamiento de esas personas, que hubieren incurrido en conducta delictiva. Puntualizamos, que esa objetividad resulta necesaria ante la posibilidad de que se utilice el procedimiento ordinario para perseguir adversarios políticos, suprimir a los disidentes u oprimir a las minorías. Señalamos, en esa ocasión, que dicha facultad podía utilizarse para encubrir actuaciones delictivas o indebidas de los miembros de la administración en el poder.

No podemos estar en mayor desacuerdo con la Mayoría, al pretender impartirle a la norma aquí pautada la eliminación, por fíat judicial, de un requisito estatutario que tiene el propósito de proteger la reputación y el buen nombre de puertorriqueños que le sirven bien a su Pueblo y de evaluar y detectar cualquier conflicto de interés entre los investigadores y los investigados.[24]

---

[24] Sobre este asunto expresamos en __Alejandro Rivera v. E.L.A.__, 140 D.P.R. 538 (1996), lo siguiente:

> ... nos señala R.E. Bernier y J.A. Cuevas Segarra, en su obra *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 299, que "[b]ajo un sistema de separación de poderes como el que funciona en Puerto Rico, la Asamblea Legislativa tiene la facultad de aprobar las leyes. El Poder Judicial ejercitado por los tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley. En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen

En el proceso de encontrar el significado de la Ley Núm. 2, _supra_, y de que nuestra interpretación logre los propósitos del legislador, en el sagrado ministerio de pautar norma jurisprudencial tenemos que descargar nuestra función buscando siempre un fin socialmente útil. Nuestra función debe permitir la prevención, erradicación y penalización de conducta constitutiva de delito por los funcionarios públicos o ex funcionarios, que disponen los Artículos 4 y 5 de la Ley Núm. 2, _supra_. Pero también debe permitir la revisión adecuada por el Panel sobre el Fiscal Especial Independiente de aquellas investigaciones preliminares realizadas por el Departamento de Justicia sobre determinados funcionarios públicos o ex funcionarios. El procesamiento criminal de cualquiera de esos funcionarios o ex funcionarios debe ser el resultado de una evaluación del Panel sobre el Fiscal Especial Independiente, que examine la presencia o ausencia de cualquier conflicto de intereses entre los investigadores e investigados; que sea el resultado de una investigación imparcial y completa bajo su supervisión; que cuente con la información inicial sometida al Departamento de Justicia bajo juramento, constitutiva de causa suficiente para la realización por esa agencia de una investigación preliminar; y de aquellos hallazgos producto de dicha investigación preliminar, realizada por esa agencia.

En el caso ante nos, la información suministrada por el entonces Secretario General del Partido Popular

personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable". **(Énfasis nuestro.)**

Democrático, señor Jorge Colberg Toro, a la Secretaria de Justicia mediante carta no fue juramentada ni expone los datos y hechos en los que funda su expresión de que "el señor Cruzado Laureano alegadamente utilizó cuentas bancarias para realizar transacciones contrarias a la ley". No establece el grado de participación de esa persona en la alegada conducta contraria a la ley.  No acompañó con su carta declaraciones juradas de las personas de las que recibió tal información.[25]

No estamos pasando juicio sobre el mérito de las causas penales que pudieran existir o estar pendientes contra el señor Juan M. Cruzado Laureano.  Esto tendrá que dilucidarse en su momento.  No obstante, entendemos como parte de nuestro ministerio el impartirle una interpretación socialmente útil al estatuto en cuestión. El único curso de acción que entendemos como armonizable con la intención legislativa es que la Secretaria de Justicia le requiera al informante original (señor Jorge Colberg Toro) que elabore, sobre los datos y hechos que dieron lugar a su carta, el grado de participación del funcionario en la conducta ilegal alegada, y que acompañe dicha comunicación con las declaraciones juradas de las personas que le suministraron tal información, de no poder él personalmente suscribir bajo juramento la información inicial.  De otra forma es imposible que el Panel sobre el Fiscal Especial Independiente pueda descargar su ministerio revisor sobre lo actuado por el Departamento de Justicia, mediante la supervisión de una investigación completa e

---

[25] No surge de tal documento la identidad de las personas que le ofrecieron la información allí vertida.  Al permitir el curso de acción que avala aquí la Mayoría, esa información se pudo haber ofrecido al querellante (señor Jorge Colberg Toro) hasta en forma de anónimo.

imparcial practicada por un Fiscal Especial Independiente, que demuestre, entre otras cosas, la ausencia de cualquier conflicto de intereses entre los investigadores y el individuo investigado. Cada investigación preliminar realizada por el Departamento de Justicia contra cualquiera de los funcionarios públicos señalados en el Artículo 4 de la Ley Núm. 2, supra, tiene que estar sometido, por imperativo estatutario, a una revisión por el Panel sobre el Fiscal Especial Independiente. De no ser así, podría incurrirse en una violación a la garantía constitucional a un debido proceso de ley de esa persona. El derecho que le reconoce el estatuto a los funcionarios públicos o ex funcionarios antes indicados, a que la investigación preliminar realizada en su contra por el Departamento de Justicia de Puerto Rico esté sometida al proceso dispuesto por ley, que incluye la intervención y revisión por el Panel sobre el Fiscal Especial Independiente de lo actuado por esa agencia, tiene el carácter y naturaleza de corolario del derecho a un debido proceso de ley protegido por la Constitución de Estados Unidos y la de Puerto Rico.[26]

II

Por los fundamentos antes expuestos, DISIENTO de lo actuado por la Mayoría en este caso. Confirmaría al Tribunal de Circuito de Apelaciones y le ordenaría a la Secretaria de Justicia impartirle cabal cumplimiento a lo dispuesto en la Ley Núm. 2, supra, a tenor con lo aquí

---

[26] Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985); Pueblo v. Vega, res. el 1 de julio de 1999, 99 TSPR 112, 148 D.P.R. ___ (1999), 99 J.T.S. 114; Pueblo v. Esquilín Díaz, 146 D.P.R. 808 (1998); U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998), pág. 617; Pueblo v. Ortiz Couvertier, 132 D.P.R. 883 (1993); Pueblo v. Prieto Maysonet, 103 D.P.R. 102 (1974).

sugerido, antes de referir el presente asunto al Panel sobre el Fiscal Especial Independiente.


Efraín E. Rivera Pérez

Juez Asociado