per curiam:
Tenemos la oportunidad de expresarnos so-bre la extensión y el efecto del requisito de juramentación de las quejas que se presentan contra abogados por violar su responsabilidad con sus clientes. Al hacerlo, rechazamos la recomendación de archivar este caso que nos hace el Comisionado Especial en su Informe, por las razones que exponemos a continuación.
*40 I
El 2 de julio de 2002 el Sr. Ángel L. Félix Medina y la Sra. Antonia Vázquez de Félix presentaron ante este Tribunal una carta, firmada por ambos, en la que explican, escuetamente, que el Ledo. Adalberto Fernández Díaz
... despues [sic] de dos audiencias suspendidas en siete meses no lo hemos encontrado ni visto mas [sic], emos [sic] hecho gestiones mas lo emos [sic] llamado a residencia ademas [sic] emos [sic] escrito sin resultado alguno.
La queja fue juramentada al dorso ante una funcionaría de la Secretaría de este Tribunal, pero por sólo uno de los quejosos, el Sr. Ángel L. Félix Medina. Una vez notificada la queja al licenciado Fernández Díaz éste respondió, refi-riéndose a “la queja del Sr. Ángel Félix Medina”, para acla-rar que su cliente no era éste, sino la señora Vázquez. Más allá de eso no expresó reparo alguno por la intervención del señor Félix Medina y procedió a explicar lo siguiente:
Debemos admitir que hubo una falta de comunicación con la Sra. Antonia Vázquez .... La falta de comunicación es de nues-tra exclusiva culpa .... Telefónicamente le he indicado a la se-ñora Vázquez, en términos generales, el estado de su caso y me he comprometido con ella a visitarla ... para exponerle en detalles la situación de su caso. (Enfasis suplido.)
En su primera comparecencia en este caso, titulada Mo-ción Informativa y Solicitud de Orden, el Procurador General señala que el abogado admitió la falta de comunica-ción con su cliente, la señora Vázquez, situación que según el Procurador es “subsanable”. En este escrito y en otros posteriores del Procurador General, incluyendo el informe que da lugar a la presentación de la querella, se manifiesta cierta ambigüedad y confusión en cuanto a la identidad de la parte quejosa. En su informe el Procurador General ex-pone que “ [e] 1 Sr. Ángel L. Félix Medina presentó una queja ... alegando que no logr[ó] comunicarse con [el] abo-gado a pesar de las veces que lo intent [ó]”. Informe de Con- *41 ferencia con Antelación a la Vista entre Abogados, 14 de marzo de 2006, pág. 1 (Informe de Conferencia). En otros escritos que obran en autos, sin embargo, el Procurador se refiere claramente a la señora Vázquez como la quejosa en este caso. También consta en autos una extensa carta de 24 de febrero de 2003 firmada por la señora Vázquez, en la que explica que ha “perdido la confianza en este Licencia-do” y solicita ayuda “para que el [sic] renuncie al caso por escrito”.
El Informe del Procurador General presentado el 14 de marzo de 2006, señala, además, que:
El 24 de junio de 2003, la demandante, señora Vázquez, so-licitó se relevara como su representante legal al licenciado Fernández, por ésta no poder localizarlo y por desconocer lo ocurrido en el caso a nivel de instancia. Surge del expediente que la Leda. Maribel Rosario asumió la nueva representación legal el 29 de de agosto de 2003.
Del expediente se desprende que el 26 de junio de 2003, se dictó sentencia sumaria parcial desestimando la demanda contra uno de los codemandados, Pedro Cruz Ayala. Esta des-estimación se debió a la falta de contestación por parte del abogado de la querellante del requerimiento de admisiones y a la fecha de oposición a que se dictara sentencia sumaria parcial.
El 16 de septiembre de 2003, notificada el 9 de octubre de 2003, el Tribunal de Primera Instancia emitió resolución de-clarando con lugar la renuncia de representación legal del Ledo. Adalberto Fernández Díaz. Ordenó que el expediente de la demandante se entregara a la nueva representación legal de ésta dentro de diez (10) días. (Enfasis suplido.) Informe de Conferencia, págs. 3-4.
Tras varias prórrogas, el licenciado Fernández Díaz pre-sentó su contestación al Informe del Procurador General y solicitó expresamente el archivo de la queja. En su escrito reitera que quien presentó la queja en su contra fue el señor Félix Medina, puesto que fue él quien la juramentó. Puesto que no existió entre el señor Félix Medina y el que-rellado una relación de abogado-cliente, solicita nueva-mente el archivo de la queja.
*42 En nuestra Resolución de 20 de mayo de 2005, habiendo considerado el planteamiento de derecho del licenciado Fer-nández Díaz, instruimos al Procurador General a que pre-sentara querella contra el abogado por violación a los Cá-nones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Así se hizo el 11 de agosto de 2005. La querella le imputa al licenciado Fernández Díaz violar los menciona-dos cánones basándose en sus propias admisiones sobre la falta de comunicación con su cliente y la representación inadecuada de los intereses de ésta, cuyo resultado fue que se dictara sentencia sumaria desestimando su demanda contra uno de los codemandados.
En su contestación el licenciado Fernández Díaz ex-presa lo siguiente: “Aceptamos la comisión de las violacio-nes de los cánones de ética señalados.” Contestación a Que-rella, 18 de octubre de 2005, pág. 1. De esta forma nueva y expresamente admite las violaciones imputadas. Sin embargo, solicita otra vez el archivo del caso por la misma razón expresada en su escrito anterior, a saber, que el Sr. Angel L. Félix Medina fue quien juró la querella y que éste nunca fue su cliente. Aduce, además, que la demandante “no sufrió daños reales, su causa de acción contra el Muni-cipio se mantuvo y después del trabajo realizado desiste de su reclamación”. íd., pág. 2. También expone como ate-nuante que se graduó cum laude de la Facultad de Derecho de la Universidad de Puerto Rico en 1976 y que en treinta años de práctica la presente es la primera querella en su contra.
El 25 de enero de 2006 designamos al ex Juez de Apela-ciones, Ledo. Heriberto Sepúlveda Santiago, como Comisio-nado Especial. Celebrada a la conferencia con antelación a la vista, el caso se sometió por el expediente. En el Informe con antelación a la vista presentado por las partes éstas reiteran todo lo antes dicho.
Según explicamos antes, el Comisionado Especial reco-mendó archivar la querella porque la queja que dio inicio *43 al procedimiento disciplinario fue juramentada por el se-ñor Félix Medina, quien no era cliente del licenciado Fer-nández Díaz. Según el Comisionado, el señor Félix Medina no era parte realmente interesada en el caso con respecto al cual se le imputa al querellado falta de diligencia y no haber mantenido comunicación con su cliente. Por eso, “[e]l criterio de razonabilidad unido a los imperativos del debido proceso de ley” le llevan a concluir que el señor Félix Medina “no está legitimado para vindicar derechos de una tercera persona que no ha tenido impedimentos para com-parecer como querellante”. Informe del Comisionado Especial, 4 de enero de 2007, pág. 2.
II
Como cuestión de umbral debemos examinar si procede el archivo recomendado por el Comisionado Especial. Re-solvemos en la negativa. En primer lugar, el Comisionado pasa por alto que este Tribunal ya consideró y adjudicó el planteamiento del licenciado Fernández Díaz. En su con-testación al Informe del Procurador General el licenciado Fernández Díaz solicitó el archivo del presente caso por las mismas razones que expuso en su contestación a la querella. Al ordenar que se presentara la querella no obs-tante dicho planteamiento evidentemente denegamos esta petición. Se trata, pues, de un asunto de derecho previa-mente adjudicado y resuelto por este Tribunal. Nuestra de-terminación constituye, por lo tanto, la ley del caso y así debió resolverlo el Comisionado ante la insistencia del abo-gado en reiterar la procedencia del archivo por el mismo fundamento.
En nuestro ordenamiento jurídico, es norma reiterada que los planteamientos que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la Ley del Caso. In re Tormos Blandino, 135 D.P.R. 573, 578 (1994). Según esta doctrina, general- *44 mente las determinaciones y asuntos decididos y conside-rados por un tribunal, en particular por un foro apelativo, obligan tanto a un tribunal inferior como al que las dictó e impiden que puedan ser reexaminados. Estos asuntos y dictámenes gozan de finalidad y firmeza con arreglo a esta doctrina. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987); Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967). En aras de velar por el trámite ordenado y pronto de los litigios y promover la estabilidad y certeza del derecho, la doctrina de la Ley del caso tiene como pro-pósito el que los tribunales nos resistamos a reexaminar estos asuntos ya considerados dentro de un mismo caso. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 222 (1975).
Claramente, no se trata de una regla férrea ni de aplicación absoluta y por eso se puede descartar si conduce a resultados manifiestamente injustos. Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992). En situaciones excepcionales, si un caso, mediante los mecanismos apropiados, vuelve ante la consideración de un tribunal y éste entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, puede entonces aplicar una norma de derecho distinta. Félix v. Las Haciendas, S.E., 165 D.P.R. 832 (2005); Noriega v. Gobernador, supra, pág. 931. No estamos, sin embargo, ante una situación de esa naturaleza.
El requisito de juramentación de la queja, contenido en la Regla 14(b) de nuestro Reglamento no dispone quién está llamado a hacerlo.(1) El Comisionado Especial concluye que cuando la queja se basa en el incumplimiento *45 del abogado con sus deberes para con sus clientes, no la puede juramentar “cualquier ciudadano”. Infiere entonces que una queja que impute violación a las obligaciones de un abogado o de una abogada en su rol como representante legal sólo puede ser juramentada por quien, en efecto, es o fue su cliente, por imperativo del debido proceso de ley.
Como cualquier norma general, el requisito de juramentación de una queja debe interpretarse de acuerdo a los hechos particulares de cada caso, con miras a adelantar el propósito del proceso disciplinario salvaguardando, claro está, los derechos del abogado o abogada a quien se imputa la violación ética. No se trata de un requisito de naturaleza jurisdiccional, más bien es uno de cumplimiento estricto cuyo fundamento es desalentar la presentación de querellas frívolas que pongan en riesgo la reputación y el buen nombre del abogado.(2)
No existe tal riesgo en el caso que hoy resolvemos. Pri-meramente, se no trata de una queja no juramentada. Tampoco podemos calificar al señor Félix Medina, con res-pecto a los hechos alegados, como “cualquier ciudadano”. El primer documento que obra en autos, firmado por la señora Vázquez y por su esposo, el señor Félix Medina re-vela claramente que no son personas duchas en Derecho. No es de extrañar entonces que por desconocimiento los esposos comparezcan juntos y que tras firmar la carta am-bos sea uno sólo de ellos, el marido, quien juramente el documento. A poco que se examine el expediente del pre-sente caso resulta evidente que la cliente del licenciado Fernández Díaz, la Sra. Antonia Vázquez, ha comparecido de manera clara y contundente para exponer su posición. Más aún, en un documento posterior la señora Vázquez comparece sola y expone con mucha claridad sus alegacio- *46 nes contra el licenciado Fernández Díaz, alegaciones que éste en varias ocasiones admite y acepta.
No vemos, en este contexto, razón alguna para variar nuestra determinación anterior respecto a la solicitud de archivo del procedimiento. Por ello, habiéndose sometido el caso por el expediente y no habiendo hechos en controver-sia, tampoco es necesario devolver el caso al Comisionado Especial.(3) Por el contrario, estamos en condiciones de adjudicar.(4)
III
Según expone la querella presentada por el Procurador General:
A septiembre de 2002 el caso civil, para el cual el Ledo. Fer-nández había sido contratado, estaba pendiente. En su contes-tación a la queja, Fernández admitió que hubo falta de comu-nicación con la Sra. Vázquez y que la misma se debió exclusivamente a él. Según Fernández, éste atravesó por un proceso duro de divorcio, luego del cual tuvo que irse a residir a San Germán, lo cual, según él, dificultó la comunicación de-bido a la distancia.
Fernández señaló que en septiembre de 2002, se había co-municado por teléfono con la Sra. Vázquez para indicarle el estado de su caso y que él se había comprometido con ella a visitarla el 14 de septiembre de 2002 y/o el 21 de septiembre de 2002, para exponerle en detalle la situación del caso. El *47 expediente no demuestra si esta gestión se materializó o no. En junio de 2003, la señora Vázquez trató de comunicarse con su abogado, mas no fue posible. Esto ocasionó la solicitud por parte de ella del relevo de representación legal el 24 de junio de 2003. Para agosto de 2003, la señora Vázquez contaba con una nueva abogada, la Leda. Maribel Rosario Cartagena.
Del expediente se desprende que, en el caso para el cual la [señora] Vázquez había contratado al querellado, el 26 de ju-nio de 2003, se había dictado sentencia sumaria parcial deses-timando la demanda contra uno de los co-demandados, Pedro Cruz Ayala. Esta desestimación se debió a la falta de contesta-ción por parte del abogado de la Sra. Vázquez, Leda. Fernán-dez, al requerimiento de admisiones y ala falta de oposición a que se dictara sentencia sumaria. (Énfasis suplido.) Querella de 11 de agosto de 2005, pág. 2.
No hay duda que el licenciado Fernández Díaz violó los Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, según él mismo acepta. Al no mantener informada a su cliente sobre los pormenores de su caso ni mantener comunicación con ésta violó el Canon 19 que impone este deber específicamente. Además, su conducta de no contes-tar el requerimiento de admisiones ni oponerse a la moción de sentencia sumaria violó el Canon 18, en cuanto éste dispone:
Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuada-mente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable. 4 L.P.R.A. Ap. IX.
Hemos recalcado en innumerables ocasiones que los abogados y las abogadas tienen el deber de atender los intereses de su cliente con la mayor diligencia, celo y cuidado. Un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía y no mantiene a su cliente informado de los *48 desarrollos del caso incurre en violación seria de los cáno-nes de ética profesional. In re Rodríguez Villalba, 160 D.P.R. 774 (2003); In re Arroyo Rivera, 148 D.P.R. 354 (1999).
La incomparecencia de un abogado a las vistas señaladas por un tribunal, su incumplimiento con las órdenes judiciales y su falta de diligencia en la tramitación del caso constituyen conductas irresponsables que violan el Canon 18 del Código de Etica Profesional independientemente de las razones que lleven al abogado o abogada a incurrir en esa conducta. In re Grau Díaz, 154 D.P.R. 70 (2001).
Cabe reconocer que el licenciado Fernández Díaz actuó seria y responsablemente al admitir que había violado los Cánones 18 y 19 del Código de Ética Profesional, supra. En su contestación a la querella aduce como atenuante que su actuación no perjudicó a su dienta pues aunque se deses-timó la causa de ésta contra uno de los codemandados, el caso continuó contra el demandado principal, el Municipio de Cayey, hasta que eventualmente la propia señora Váz-quez desistió de su demanda, sin perjuicio. Expone en su favor también que en sus treinta años de gestión profesio-nal no se ha presentado en su contra otra querella.
Tomando en consideración estos factores, según lo he-mos hecho en otros casos,(5) consideramos adecuado y justo suspender inmediatamente al Ledo. Adalberto Fernández Díaz por el término de un mes del ejercicio de la profesión. Este término comenzará a transcurrir a partir de la notifi-cación personal de esta opinión “per curiam” y sentencia.

Se le impone el deber al Ledo. Adalberto Fernández Díaz de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera ho-norarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los distintos foros judi-
*49
dales y administrativos del país. Además, deberá certifi-carnos el cumplimiento con lo anterior dentro del término de 30 días, a partir de la notificación de esta opinión “per curiam” y sentencia.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri hizo constar que está conforme con el análisis del Tribunal en este per curiam, pero disiente en cuanto a la sanción que se impone. Vista la totalidad de las circunstancias, limitaría la sanción a una censura enérgica. La Jueza Asociada Se-ñora Rodríguez Rodríguez concurrió sin opinión escrita.

 “Cualquier queja escrita y bajo juramento que se reciba por el Tribunal o por cualesquiera de sus Jueces respecto al comportamiento de un(a) abogado(a) o de un(a) notario(a) será debidamente anotada por el (la) Secretario(a) en el registro especial correspondiente que llevará a esos efectos. No se anotará ni practicará asiento alguno sobre queja sin jurar, o carente de suficiente especificación de hechos en que se funde.” 4 L.P.R.A. Ap. XXI-A.

 Respecto al requisito de juramentación de querellas, véanse: In re Invest, ex Alcalde Vega Alta, 158 D.P.R. 666 (2003); Pueblo v. Rodríguez Santana, 146 D.P.R. 860 (1998); Pueblo v. Rexach Benítez, 130 D.P.R. 273 (1992).

 Respecto a la función del Comisionado Especial, véanse: In re Gordon Menéndez I, 171 D.P.R. 210 (2007); In re Rodríguez Feliciano, 165 D.P.R. 565 (2005); In re Ortiz Brunet, 152 D.P.R. 542, 548 (2000); In re Ríos Rivera, 147 D.P.R. 140, 143 (1998); In re Morales Soto, 134 D.P.R. 1012, 1016 (1994). En cuanto a nuestra facul-tad para adoptar, modificar o rechazar el informe del Comisionado y los criterios que tomaremos en consideración, véanse: In re Gordon Menéndez I, supra; In re Rodrí-guez Mercado, 165 D.P.R. 630 (2005); In re Semidey Morales, 151 D.P.R. 842, 844 (2000); In re Moreira Avillán, 147 D.P.R. 78, 86 (1998); In re Soto López, 135 D.P.R. 642, 646 (1994).

 Ante las admisiones del licenciado Fernández Díaz este Tribunal pudo haber resuelto el presente caso sin necesidad de otros procedimientos, según dispone la Regla 14(e) del Reglamento del Tribunal Supremo, que en lo pertinente indica: “El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando de la propia contestación surjan hechos que lo justifiquen”. 4 L.P.R.A. Ap. XXI-A.

 Véase In re Arroyo Rivera, 148 D.P.R. 354, 361 (1999), y casos allí citados.